Kathing Anderson v. Tıpec, Inc. Our third case for this morning is Bigger v. Facebook, Ms. Wormuth. Good morning, may it please the court. My name is Anna Wormuth. I represent Appellant Facebook. The issue comes before the court today on an interlocutory appeal of the district court's order authorizing notice in a Fair Labor Standards Act collective action. Can I just interrupt you right at this jurisdictional point? So I'm a little bit concerned because even under a functional denial of class certification, even our cases that say we have jurisdiction in that context, this wasn't quite a denial. I mean, as you put it, it's changed the scope. Oh, no, no, no, sorry. We have another class action case and we're putting it together. Yes, yes, yes. I apologize. I apologize. Too many class actions today. Understood. Yeah. No problem. Too many business cases. But actually, I have a question for you, which is this. What the district court did could certainly be characterized as a case management action by saying, let's do the notification now, see who raises their hand, and worry about the effect of the mutual arbitration agreements down the line. Because Facebook, for some reason, has assumed that all of the people who signed mutual arbitration agreements are going to be faithless and disregarding of obligations they've undertaken. I think it's equally possible, and perhaps more likely, that people who've signed these in court dispute resolutions. So that's my first thought. And my second is, I don't see where's the harm in notice, because the district court is not in any way making a decision on tribunal when the district court orders notice. So if somebody who's a party to a mutual arbitration agreement thinks, hmm, was I being paid enough, I don't know what's to prevent them from filing an arbitration request, arbitrating with Facebook. And Facebook itself is the one that decided that it preferred individual by individual arbitration, totally its choice, absolutely within its prerogative. But it stands badly for Facebook to complain about the burden of individual arbitrations, since that's what Facebook insisted on. So first of all, why don't we just affirm this as case management and say, the question whether due respect for whether an arbitration agreement even exists, a question that's typically for the court, and secondly, whether anybody is trying to evade it should await the result of notice. Maybe there's no problem, and you're just seeing ghosts under the bed. I'll start. I think there are at least two questions there, Your Honor, and you can tell me if I'm misunderstanding that. But I think one of your questions is, why is this not just a proper exercise of case management authority? And then I think the second question really is- Right, since he doesn't make any ruling whatsoever that undermines any of your agreements. Well, so I think in the facts of this case, well, first of all, I think we have to look at Hoffman LaRoche. Can we just start with what he's done? I mean, we have an order that we certified for 1292B review. And the order is to send out notice to these people who are described as anyone who was employed by Facebook. So let's assume that those people get notice. Why isn't that a legitimate exercise of case management? Because it's inconsistent with the purpose of notice under Section 216B of the Fair Labor Standards Act. No, it isn't. See, that's where I disagree with you. I think notice alone for these people in no way dictates which tribunal. And I will say that it's interesting in this case that Facebook, unlike the situation that was before the Fifth Circuit, Facebook is standing here saying, oh, trust us. We know exactly how many people have these agreements and which ones are binding and which ones aren't. Whereas the district judge is saying, well, wait a minute. We know from first options against Kaplan that the question whether there's an agreement to arbitrate is one for the court. Once there is an agreement to arbitrate, then certainly we give a tremendous deference. We enforce it. We applaud it. We do whatever the Supreme Court is asking us to do. No question about that. Nobody's disagreeing with that. But that just seems down the line to me. I think the notion of notice first and arbitrate later really is... It's not arbitrate later. It's notice first and see if you're even going to opt in. This is not a 23b-3. Right. And the purpose of notice under Section 216b, it's a joinder device. I know that. Right. And so inviting individuals to join in an action when the unrebutted evidence presented, and those are the facts of this case. There's unrebutted evidence regarding the facial and presumptive validity of these mutual arbitration agreements. Well, wait a minute. No, I'm going to take some exception there. There certainly is evidence in the record from your two templates that somebody has something that looks like an arbitration agreement, and I'm giving you the benefit of the doubt and assuming that a lot of people do, but we have no record evidence person by person of who has which agreement, which model did it follow, did the agreement have any qualifications. Maybe that's the next step for Facebook to go to the court, as happened in the Fifth Circuit, and say, we can back this up, so we would like you to exclude these people from the notice. We aren't there yet. Your Honor, I think we are there. This is a case where... Why should we take your word for it, frankly? Well, here's what happened. This is not a new issue that plaintiff was unaware of. Plaintiff knew well in advance of the motion for conditional certification about the existence of these agreements, and plaintiff told the court, let's have this play out on conditional certification. The court said the same thing, and the plaintiff even notified Facebook that it intended to The court granted the parties the opportunity to conduct discovery on this issue and discovery pre-certification, which is not always the case with respect to Fair Labor Standards Act collective actions, and so there was an opportunity for plaintiffs to discover this issue. But it's not plaintiff's burden. Even under the Fifth Circuit's approach, the defendant would bear the burden of proving by preponderance that there were these arbitration agreements. It's our burden to prove the ultimate enforceability. No, no, no, no, even the existence, because as I understand it, she would come forward and say, these are the people who are similarly situated to me in terms of my job description, but then the burden would be on you to say, no, actually, they're not similarly situated to you because you don't have an arbitration agreement, and these people do, and here's our evidence of that. And we did present that evidence, and I was... You presented a template. That's way different. That's way different. And, I mean, what you say, this is page nine of your brief, by Facebook's calculation, at least 336 of the 428 CSMs have executed these agreements. What if it's 334? What if it's 340? I mean, we have no evidence in the record that supports that number. I mean, and indeed, that number changed over time. First, you had a lower estimate, then you upped it to 336, and I think that's the kind of burden that you bear that hasn't happened yet, and the district court left the door wide open for you to do it later on, but people are going to get notice, and I think what Facebook is really afraid of is that some people with arbitration agreements are going to find out there might be a problem, and they're going to ask for arbitration. Facebook does not fear that, and there is... It has mutually agreed to arbitrate claims. The concern here is that the district court, in facilitating notice to these individuals, and we're talking about highly compensated individuals, who I think there's a fairly slim theory of relief here to begin with on the underlying claims, but you have these individuals receiving, I'm sorry, in order to facilitate and effectuate the notice, Facebook will be compelled and has been ordered to produce highly sensitive non-public information about these individuals, including their social security numbers, including their telephone numbers and email addresses. Why are there other ways of handling that besides saying that there shouldn't be notice? I want to ask you about identifying the employees that are similarly situated. So what exactly is your theory, because as I understand the way this would go is in identifying who should receive notice and then getting the district court to assist in the description and then sending it, there has to be some criteria for figuring out who's a similarly situated employee and if the defenses are shared, et cetera. So can you explain to me how your theory fits into that process? Well, so the similarly situated language is directly from Section 216B of the statute. Unfortunately, that statute does not set forth, it doesn't talk about notice at all, it doesn't talk about a two-step process, it doesn't talk about... But if only the similarly situated employees are entitled to opt into the action, then it would stand to reason that only the similarly situated employees should get notice, and Right, and this court, by the way, has said that that is not a ministerial assessment. That needs to be done, and Hoffman-LaRoche says this too. What needs to happen at the outset of a piece of litigation is there needs to be a serious assessment of the scope of the individuals who are going to receive notice. And the purpose of that, Hoffman-LaRoche teaches us, is to avoid misleading communications and having to cancel consents later. Hoffman-LaRoche specifically says that, and when you look at how... Well, and let me stop you there, because one sensible, easily administered thing you can do is say, well, at least at Facebook, in this instance, it's the people at this manager level IC3 or IC4 who are the target of concern. We're not talking about every Facebook employee, etc., but Facebook doesn't seem to have even asked for language in the certification saying, you know, if you have signed a mutual arbitration agreement, you may not be entitled to join this action. You know, a simple sentence, you know, but Facebook is like, all or nothing, let's go for bust, and I'm very surprised if you really thought that this was a misleading collective description that you didn't propose something that was better. Well, at the time, we were arguing, Your Honor, that they shouldn't be given notice at all. I know it. You were on the all or nothing plan, but I don't know why you didn't, I mean, cautionary language like that, it seems to me, would go a very long way toward addressing your concern. Well, it would be better than nothing, because your concern, right, is settlement pressure and stirring up litigation. Exactly. We certainly disagree that even a sentence to that effect fixes the concern here, because what you're still doing, or what the court is still doing, is facilitating a communication to non-parties, telling them there is this collective action. You may be able to join it, but you might not. But you may not, but there is this collective action, but I would think if I were an arbitrator hearing an individual case from an IC4 level person at Facebook, it would be a matter of great interest to me to know that there was a parallel court-based collective action going forward. I mean, I don't know why you think keeping people in the dark about this, if they are IC3 or IC4s, is desirable. And I really don't understand why just telling them, you know, you may not be entitled to be part of this if you've signed an arbitration agreement, isn't the real fix for this sort of thing. Some people signed, some people didn't. Some people seemed to have exceptions that they could opt out by signing a form. Some people didn't do that. It's a mixed situation. Our goal here is not to keep anybody in the dark, and so we take issue with that iteration. What we are concerned about is the court overstepping or getting involved in the potential solicitation of claims outside of the one proceeding. Hoffman LaRoche says that courts have a role in communicating with non-parties, and that role is to join efficiently and in an orderly fashion, join potential plaintiffs to a collective so that those claims can be resolved in one proceeding. And a notice that says, you might be able to join, but maybe you can't, that just stirs up litigation outside of the one proceeding. And with that, Your Honor, I'm sorry, I'm down to just under two minutes, so I'd like to save some time for her. I'm sorry for giving you the small heart attack at the outset. It's all right. Thank you. You'll have enough time. Ms. Bekvar. Good morning, Your Honors. May it please the Court. As Your Honors correctly observed, this appeals about what the trial court can and cannot do in exercising its broad power to manage collective actions. What the court can do is issue notice informing employees of their fair labor. Counsel, let me ask you a question. If Facebook does show, by a preponderance of the evidence, that there are arbitration agreements with a finite, identifiable number of employees, what is the point of sending notice to these people because they wouldn't qualify as similarly situated people who didn't have individual defenses that would have to be litigated with Facebook? I mean, I think the first step to take there is Facebook hasn't met its initial burden of production to produce this evidence, but say they produced, for example, copies of every single arbitration agreement. Well, right. Something like what happened in the J.P. Morgan case in the Fifth Circuit. And that didn't happen in the J.P. Morgan case. I think the Fifth Circuit said there that would be the burden that the defendant would then have going forward. I didn't think that. I thought that the plaintiff in that case didn't contest. Everybody agreed they were arbitration agreements. Yeah, I thought that was off the table and the individual ones. So there wasn't an issue there. Yeah. So just go with my hypothetical. With a hypothetical. Okay. Saying Facebook produced all these arbitration agreements, the named plaintiff in this case does not have one. So why does she get to send notice to those who do? You're not answering the question. She... There are two questions, I guess. If they produced them all, she gets to send notice to everyone who does because she has met the standard under the FLSA. Why? I guess your argument was more that she doesn't know yet who has an actual agreement. Arbitration is a creature of agreement. And so she's going to have to yield when she discovers who has agreements because she is, I would say, not at all similarly situated to those who have valid and binding arbitration agreements. But she doesn't know yet who's there. So isn't it efficient to send notice and then, again, I still don't understand why people with these agreements are going to jump on board and try to opt in when that's flatly inconsistent with what they've already promised to do. But I do want you to answer my question. So if you have, during discovery, because you got discovery at the conditional certification stage, and if you did have Facebook carry its burden of showing by a preponderance that these agreements existed, is it your position that the plaintiff would still have the right to give notice? I think then the plaintiff would need the opportunity to take discovery on those agreements. You had discovery. So what I'm saying is the agreements are produced. The agreements are there. In the hypothetical. You have to roll with the hypothetical. We have the agreements. The next step, then, is, well, we need access to these people who signed the agreements to find out. So, yes. Your answer is yes. Yes. The circumstances. Okay. So you are saying that even if Facebook shows that all these people have agreements, your position is that you still get to send them notice? That would be the mechanism to do it. Or something like what the Fifth Circuit. Okay. So it's yes, right? Yes. You're still not answering. Okay. Yes. Yes. So to you, Facebook has, that is irrelevant. Facebook's ability to show that these agreements exist is irrelevant to the question of whether you get to send notice or not. You always get to send notice, and Facebook really doesn't get a chance to show whether there are agreements that would bind until later.  Well, until step two. On these facts. That. Exactly. And the court looks at, what do we really have? And of course, Facebook says, what about the concern in Hoffman about fomenting litigation, you know, giving people the misunderstanding that they have a right to litigate something when they actually gave that right away? You know, this is inefficient, isn't it? No. It's actually not inefficient because it puts the opportunity for Facebook to determine whether any valid arbitration agreement exists on a complete record after individuals who have joined the case, if any join the case, have arbitration agreements. So Facebook says to you, in response to that argument, aren't you applying an impermissible presumption of invalidity of our arbitration agreements when the Supreme Court does it the other way? When the Supreme Court says we presume them valid unless there's a problem? Well, first off, any policy favoring arbitration does not happen at this formation stage, at the stage of Facebook showing that these agreements formed and are valid. Okay, agree. So that's, there's no presumption at this stage. With regard to whether, that we're arguing that they're presumed invalid, it's not really that they're invalid, it's that this is not the right time to determine that validity. The right time to determine that is once individuals with those arbitration agreements join the case, they're parties to the case, then there can be discovery and the individuals who have a chance to, I'm sorry. I still don't understand. If they have, let's just imagine they produce copies of all of the signed agreements. The agreements are there, and then once the agreements are produced, and once, you know, we have the contracts in front of us, then I think you can't presume that they're invalid. But you're saying we should invite all of these people, even though we have the arbitration agreements in front of us, to join the suit and then come and then duke it out? Well, I think, you know, them producing the agreements isn't the end of the inquiry about whether the agreements are valid. So there's first whether they exist at all, which they haven't shown, and then there's whether they are valid, and that really depends on the circumstances on which they were entered. But that's something that your client, that the plaintiff does not have an agreement, and so your client doesn't have to duke that out. So once we know that there are agreements, we're already in the situation where you're not similarly situated anymore because we know that all these other people to whom you want to send notice are going to have a threshold issue of Facebook's defense that this has to be dismissed and sent to arbitration that does not involve the plaintiff. I still think that's putting the cart before the horse by saying because there are these agreements that they are valid and should be enforced. I didn't say that. What I said is we know there's going to be a dispute about the validity of the agreements, and that is not a dispute that the named plaintiff in this case is involved in because she has no arbitration agreement, and so now all these other people are distinguishable from her. They are distinguishable from her, but it is a consideration that the court makes at the second stage. It's part of the merits, the substance of these agreements. So can I just, I want to get back to that because it does seem to me that if we're going through an elaborate procedural process only to wind up where we started, it's wasteful. So if we're sending notice to people and then they come back and we discover, oh, you have an arbitration agreement, and then the district court at stage two says they're therefore not similarly situated to the named plaintiff, so we're going to exclude them from, I mean, that's a lot of action, but what we don't know, we don't know right now in this case two things. We don't know for sure how many people have agreement because Facebook has not done what Judge Barrett is hypothesizing another defendant might do, not even in a more modest way, not even without all the extra information like social security number that they're objecting to. They haven't done it at all. So there's that, and we don't know yet when this notice comes out who's going to opt in. Is it going to be the people with no agreement? Is it going to be all the people in these IC3, IC4 positions? Is it going to be something else? So we don't know really what we're looking at, and so there's a certain prematurity concept here, and I think the district court thought if not very many people with arbitration agreements opt in, maybe I don't have a giant problem on my hands. I think that's right, Your Honor, and to go along with the prematurity argument, if this is done before notice goes out, if these arbitration agreements are produced and the validity is determined, that's going to have to be for this entire group, whereas if you let people opt in, whoever may opt in, that narrows the issues considerably, and I think that's what the court had in mind in thinking, well, let's see how many people opt in, what that looks like, and then I can determine, because it depends on state contract law. We don't even know what state these people are in. Well, there's another thing it depends on, too. I mean, we've been talking about similarly situated, and this happens all the time in Rule 23 class actions also, which is how different do you have to be to fall outside the scope of the litigating unit? So we've identified one defense that people who've signed arbitration agreements may have. They have a lot of similarities, too. They may be IC3 and IC4, and maybe that defense is so huge that it prevents them from being similarly situated. Other minor differences among plaintiffs might not. So there's a certain need to refer to FLSA law under 216B to see what does it take to be in that group of similarly situated people. Well, at this initial notice stage, the standard is very broad, and it's a very modest standard. All that the plaintiff has to show is whether potential plaintiffs were victims of a common unlawful policy. And here, Facebook hasn't disputed that these IC3s and IC4s were all misclassified as exempt. That wasn't the basis of opposing it. Well, they know that's a dispute. They're not conceding that they're misclassified. I'm sorry. That they're all similar in that way, that the group is similar in that way. And in responding to our motion for our conditional cert, the issue front and center were these arbitration agreements. So they didn't even argue, these people are very different, they work in different locations. Yeah, but I think Judge Whitt's question is getting at, is the existence of the arbitration agreements enough to make them not similarly situated? Right. Essentially, is that the critical kind of difference we need to say, that actually needs to be resolved even before that first notice goes out? Yeah, and the response to that would be, there is a mechanism to decide whether individuals are similarly situated. And it's two steps, and it's the two steps under this process. Okay, now we've never said, and we've never said that the two-step analysis is required. And so I understand that district courts widely do it. But I think if you hang your hat entirely on that, it's not in the statute, we've never said it, I mean, what's really the point of the two steps? The point of the two steps is for, it's a case management process, right? It's for, there has to be a way for plaintiffs to be able to participate in a collective action. Right. Without this notice part of the process that's authorized by the court and supervised by the court, you have plaintiffs' counsel and plaintiffs kind of going out on their own. And that's where the issue about soliciting claims comes up in Hoffman LaRoche. Hoffman LaRoche said, well, it makes sense for the court to be able to manage this process, make it orderly, supervise it, so that you don't have this, like, plaintiffs' counsel just going out and trying to draw litigation. Sure, but I guess what I'm saying, it kind of sounded to me like you were hanging your hat on a right to two steps. And I think as a case management tool, it can make a lot of sense to do the two-step process for the reasons you say. But it's not such a rigid framework. It is, it's a case management tool that you can say kind of, we have the right to have this set at step two, because there's no requirement. I mean, that's kind of a discretionary measure the district court employs. Exactly. And you're right that this court has not explicitly authorized that two-step process, but six other courts have. Well, we haven't insisted on it. We certainly have said, if you use it, that's okay with us, but there may be some cases in which another way of managing litigation would also make sense. Yes. Yeah. If there are no other questions, Your Honors. I see none, so thank you very much. Ms. Ramuth, I'm sure there's something further. I have just a little bit of time here, so I'm going to try to be very precise and quick. I have three points I'd like to make. So one is, in response to Judge Barrett's questions, counsel, about, would you yield once all of the arbitration agreements are produced? And what we hear is, no, we still want to have access to these individuals. So that's a concession that there are going to be collateral proceedings, that this is really a way for the district court to assist the plaintiff in soliciting claims outside of the one proceeding. And at a minimum, the court will be required to address, in discovery, individualized claims outside of the one proceeding. And so that's one of our primary concerns with the district court's order. I'd like to address J.P. Morgan very quickly. What J.P. Morgan said, as I read it, is that in the absence of a genuine dispute over the existence of the agreements, then the burden is on the party trying to show the existence of the agreements to do so by a preponderance of the evidence. There's no genuine dispute here. There's a theoretical dispute. But no one knows who the agreements are with. That's my point. I will agree with you that I don't think there's any genuine dispute over the question whether someone has one of those two templates. Some people have template number one. Some people have template number two. But down at the more granular level, which is what we've reached, since you're trying to do this at the notice stage, we have no idea who has an agreement. And that would have been your burden. Well, and I would argue that these are not templates, that they are actual agreements. My very last issue that I'd like to raise is that I do think that the two-step standard in cases involving arbitration agreements under the Federal Arbitration Act, that it's an inconsistent process. And I don't think Hoffman LaRoche, before arbitration agreements — So you're asking for one step? You think a one step, not a conditional certification and then a certification? You're saying there should be one step certification? Or certainly, if the plaintiff is going to come in and tell the court, we want discovery on this issue, and — Let's be precise. This issue. If the discovery is on the question whether there is a valid arbitration agreement, that is an issue for the court. If the discovery is on the enforceability or what kind of arbitration agreement, at that point the arbitration agreement is clothed in very strong armor by the Supreme Court, and that's a question in which all of the inferences would be in favor of the parties to the agreement, Facebook as a party to the agreement. But we don't want to lump it all together. And I don't — I don't know if I was doing — If you want a concluding sentence, go ahead. Thank you, Your Honor. The issue is this, where there's a preponderance of the evidence, and we think we met that burden. They're not templates. They are actually signed agreements that were inserted into the record with a declaration regarding the manner in which the contracts were formed. So we meet the — So for two people, you can say notice shouldn't go out to them. Right. Certainly for two people and for many more. And, by the way, Judge Connelly in the Hudgens case said that for nine, and then based on the nine said we're not going to send notice to the rest. That's right. Thank you, Your Honor. Thank you. Thank you to all counsel. We will take this case under advisement.